UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

WILLIAM K. GLOVER,    |

   |

   Plaintiff,    |    Civil Action No. 10-00088-DLB

   |

vs.    |

   |

GRANT COUNTY DETENTION CENTER,    |    **MEMORANDUM OPINION AND**
ET AL.    |    **ORDER**

   |

   Defendants.

\*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*

Plaintiff William K. Glover is confined in the Grant County Detention Center ("GCDC") located in Williamstown, Kentucky. Glover filed a *pro se* civil rights action asserting claims under 42 U.S.C. § 1983.

Section 1983 authorizes "any citizen of the United States or other person within the jurisdiction thereof" to pursue "an action at law [or] a suit in equity" against "[e]very person who, under color of" state law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. "Although '§1983 by itself does not protect anyone against anything[,]' the statute 'provides a remedy for deprivations of rights secured by the Constitution and laws of the United States . . . ." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1348 (6th Cir. 1992) (citations omitted). In order to sustain a claim under § 1983, a plaintiff must identify a right secured by the United States Constitution and a deprivation of that right by a person acting under color of law. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992).

This matter is before the Court for initial screening. Because this is a civil action that is being pursued by a prisoner against government officers, the Court must screen the Complaint under 28 U.S.C. § 1915A(a). Additionally, the Court must also screen the Complaint under 28 U.S.C. § 1915(e)(2)(B) since by separate Order, Glover has been granted *in forma pauperis* status. Both of these sections require the Court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. §§ 1915(e)(2)(B), 1915A(b).

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *Wagenknecht v. United States*, 533 F.3d 412, 415 (6th Cir. 2008) (citing *Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983)). Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

## NAMED DEFENDANTS

The named defendants are: (1) the Grant County Circuit Court; (2) Steve Kellam, Jailer of the GCDC; (3) Captain East of the GCDC; (3) Captain Courtenay of the GCDC; (3) Sergeant Hale of the GCDC; (4) Corporal Young of the GCDC; (5) Lieutenant Webster of the GCDC; (6) the Grant County Court; and (7) two John Doe defendants.

## CLAIMS ASSERTED AND RELIEF REQUESTED

Glover's twenty-seven-page Complaint consists of the original submission (Doc. #2), two lengthy handwritten supplements thereto, (Docs. #2-1, 2-3), and several grievance forms pertaining to the issues raised in the Complaint (Docs. #2-2, 2-6, 2-7, 2-9). In those submissions, Glover asserts a myriad of claims challenging the prior conditions of his confinement at the GCDC. He

further complains about the manner in which his criminal case pending in the Grant County Circuit Court is being administered, specifically, the performance of his criminal attorney, Keith Morgan.[1]

Glover's condition of confinement claims include, but are not limited to, complaints about restrictions on the copying of legal documents; postage and mailing procedures; restrictions on inmates' incoming mail; inability to receive newspaper subscriptions; $2.00 charges for hygiene products; $10.00 charges for medical treatment; restrictions on towels, socks, and underwear allotments; alleged denial of Q-tips; alleged overcrowding and lack of tables, chairs, and towel hooks; alleged failure by GCDC staff to respond to grievances; exposure to cold air; alleged denial of adequate amounts of blankets; denial of frequent change of underwear and socks; alleged retaliatory punishment consisting of a few days in "the hole"; and alleged discriminatory and preferential treatment to Class "D" inmates.

Glover seeks compensatory and punitive damages, as well as injunctive relief in the form of an Order prohibiting the GCDC from continuing to engage in conduct and practices which he deems to be unconstitutional.

DISCUSSION

1. Eighth Amendment Conditions of Confinement Claims
A. Standard of Review

Glover's claims are based on the conditions of his pretrial detention at the GCDC. The Eighth Amendment forbids the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Because the Cruel and Unusual Punishments Clause is only concerned with punishment by the state "after it has secured a formal adjudication of guilt in accordance with due process of law,"

---

[1] On May 26, 2010, Glover filed a letter in which he complained that the Grant County Circuit Court "refuse[s]" to respond to his Complaint against jail officials. (Doc. #6-2, 1).

3

*Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), it does not apply to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). However, state pretrial detainees are shielded from cruel and unusual punishments under the Fourteenth Amendment's Due Process Clause, *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citing *Thompson v. County of Medina,* 29 F.3D 238, 242 (6th Cir. 1994)), which provides analogous protections to the Eighth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). For the sake of simplicity, the Court will refer to the Eighth Amendment in discussing Glover's litany of claims.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In addition to prohibiting the use of excessive physical force against prisoners, the Eighth Amendment also imposes certain duties on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

Conduct by prison officials that imposes "unnecessary and wanton infliction of pain" is prohibited under the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981)). The Supreme Court has found that in order to determine whether a condition of confinement amounts to an Eighth Amendment violation, it must look to "the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. at 346 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). A condition of

confinement claim has two elements: (1) the prisoner must establish that a "sufficiently serious" deprivation has occurred, *Farmer*, 511 U.S. at 834; and (2) the prison official's state of mind was one of "deliberate indifference" to the inmate's health or safety. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

To establish a sufficiently serious deprivation, routine discomforts of prison life do not suffice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, the deprivation must result in "the denial of 'the minimal civilized measures of life's necessities" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). Therefore, the deprivation would involve the denial of "'essential food, medical care, or sanitation' or 'create other conditions intolerable for prison confinement.'" *Neal v. Miller*, 778 F. Supp. 378, 382-83 (W.D. Mich.1991) (quoting *Rhodes*, 452 U.S. at 348).

To prove the second element, the prisoner must also establish that the prison official acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 297. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. The official must be aware that the inmate "face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Id.* at 834.

### B. Eighth Amendment Standards Applied To Claims of Inadequate Supply of Towels, Socks, Underwear, Tables, Toilet Paper, Beds and Towel Hooks; and Exposure to the Cold

Glover claims that the following alleged deprivations violate the Eighth Amendment of the United States Constitution: (1) that he was forced to use only one towel per week, (Doc. #2-1, 1);

5

(2) that he is being charged $2.00 per week for hygiene packs, (Doc. #2-1, 1); (3) that he and other inmates have been housed in "drunk tanks" without a change of underwear and socks for more than six days, (Doc. #2-3, 1); (4) that for three days he only had one thin blanket which he contends was insufficient to protect him from the "extreme cold conditions," *Id.* at 3; (5) that on one isolated occasion Defendant Young refused to provide him with an adequate amount of toilet paper or soap, *Id.* at 4; and (6) that GCDC was so overcrowded he had to sleep on the floor, did not have a table on which to eat or a hook upon which to hang his towel or washcloth, *Id.* at 6.

Prisons and jails are not required to provide, nor can prisoners reasonably expect to receive, "the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). "A broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." *McKune v. Lile*, 536 U.S. 24, 36 (2002).

While these alleged deprivations, if true, may have constituted isolated or temporary periods of unpleasantness, discomfort or inconvenience to Glover, they did not amount to serious deprivations under the Eighth Amendment. "Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation." *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989); *see also McNatt v. Unit Manager Parker*, No. 3:99-CV-1397, 2000 WL 307000, at *4 (D. Conn. Jan.18, 2000) ( holding that no Eighth Amendment violation occurred when inmates endured stained, smelly mattresses, unclean cells, no bedding for six days, no cleaning supplies for six days, no toilet paper for one day, no toiletries or clothing for six days, no shower shoes, water that did not function properly, and smaller food portions). However, long term or frequent deprivations of these items would amount to a

violation of the prisoners' constitutional rights. *Gilland*, 718 F. Supp. at 685. In the instant case, Glover does not even allege that he has been denied personal hygiene products or clothing, but merely that he is not receiving these items as often as he would like. Furthermore, despite his claim that charging $2.00 for hygiene packs is unconstitutional, he has not alleged that he ever lacked sufficient funds to purchase such items at GCDC. These so-called short-term deprivations of hygienic items and clothing are clearly insufficient to amount to serious deprivations under the Eighth Amendment.

To the extent that Glover claims that he did not have a table on which to eat his meals and that he did not have a hook upon which to hang his towel, he fares no better. While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347-48; *Ivey*, 832 F.2d at 954. Neither a towel hook nor a table are necessities of life. *See Perkins v. Kan. Dep't of Corr.*, No. 95-3520-GTV, 1997 WL 383072, at \*3-4 (D. Kan. June 9, 1997) (holding that where prisoner had to sleep on mattress on the floor and had no table on which to eat, no Eighth Amendment violation was established). Likewise, Glover's inability to change his underwear and socks as often as he liked does not amount to violation of constitutional proportions. *See O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir.1996) (several days without underwear, blankets, mattress, exercise and visits is not in violation of Eighth Amendment); *McCorkle v. Walker*, 871 F. Supp. 555, 557 (N.D.N.Y. 1995) (Eighth Amendment was not offended when a prisoner was unable to change his underwear for 15 days).

Glover also alleges that he was exposed to cold temperatures between February 2-5, 2010 with only "one thin sheet/one thin blanket," (Doc. #2-3, 3), and again for 2 ½ days later that month

when he was placed in "the hole" as a disciplinary measure. *Id.* at 3-4. Again, these short durations of cold conditions fail to amount to a serious deprivation of the minimal civilized measure of life's necessities. *See Wells v. Jefferson County Sheriff Dept.*, 35 F. App'x 756, 757 (6th Cir. 2003) (finding no Eighth Amendment violation where inmate slept on mattress on the floor in a cold cell for six days). Furthermore, Glover has provided no evidence that any defendant GCDC official acted with deliberate indifference by knowing of and disregarding an excessive risk to Glover's health or safety.

One more issue deserves comment. Pursuant to 42 U.S.C. § 1997e(e), an inmate may not seek monetary damages for emotional distress or mental suffering without first showing a prior physical injury. While Glover's complaint asserts a large number of claims, it is unclear whether he is claiming that he suffered emotional distress as a result of his conditions of confinement. However, even if Glover is making an emotional distress claim, he has failed to allege any physical injury whatsoever. Therefore, his Eighth Amendment claims fails pursuant to this statute, as well. Accordingly, these claims will be dismissed with prejudice.

2. First Amendment Claims Challenging Copying and Postage Procedures;
Restricted Access to Writing Materials; Restricted Access to Newspapers;
and Restrictive Incoming Mail Policies

Glover alleges the GCDC refused to notarize, copy, and mail a civil Complaint asserting claims against GCDC officials (Doc. #2, 3); that Jailer Steve Kellam required him to copy his Complaint by hand, *Id.* at 4; and that Kellam requires inmates to have postage funds in their inmate account if they intend to file legal documents in the courts, *Id.* at 6. For the following reasons, these claims lack merit and will be dismissed with prejudice.

8

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Id*. at 824-25. Despite this constitutional right, a prisoner must show "actual prejudice" to ongoing or contemplated litigation to state a claim for relief. *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). However, Glover fails to argue or show any actual injury as a result of the alleged restrictions on his court-mailings. The alleged mailing limitations did not prevent him either from filing this action or the Complaint that he states he filed in the Grant Circuit Court. *See* (Doc. #6-2). Thus, Glover has not been denied access to any court, and he has not been hindered in his ability to pursue a legal claim.

Contrary to Glover's assertions, he has no constitutionally protected right to the use of a copy machine. The right of access to the courts does not include free and unlimited access to photocopies. *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003). *See also Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989); *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980) (per curiam). Moreover, Glover has again failed to show that he suffered actual injury as a result of his denial to a copy machine.

As for the requirement that inmates have funds in their account to cover postal expenses, Glover again asserts no actionable claim of denied access to the courts, or facts establishing any other form of actual injury. Glover has filed a motion to proceed *in forma pauperis* which indicates that over the last six months he has had various amounts of funds in his inmate account which would have covered any postal expenses associated with mailing legal documents. The postage-fund

requirement has not prevented Glover either from filing this action or the one he states he filed in state court. His right of access to the courts has not been restricted.

To the extent that Glover purports to argue this issue on behalf of other GCDC inmates, he cannot represent the interests of others. "[A] prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional rights of other prisoners." *Newson v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989).

Next, Glover does not assert a legitimate claim challenging the restrictions on incoming mail at the GCDC. Prisoners enjoy First Amendment rights that are not "inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system." *Jones v. N.C. Prisoners' Labor Union, Inc*., 433 U.S. 119, 125 (1977) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) . Prison administrators' decisions are given broad deference because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89. The *Turner* court reviewed four factors that are relevant in determining the reasonableness of a challenged prison regulation. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). If the connection between the regulation and the governmental objective is "so remote as to render the policy arbitrary or irrational", the regulation

is unconstitutional, *Id*. at 89-90; therefore, the court need not reach the other factors.

Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" available "that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 90-91.

In this case, Glover claims that restrictions on inmates' access to newspapers, or their alleged inability to obtain subscriptions, violates their right to "freedom of the press." However, the term "freedom of the press" does not apply to the issue of prisoners' access to newspapers. It is widely understood to protect the publishing activities of individual editors and printers. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 360 (1995).

Glover does not allege that he was denied access to newspapers, only that he was denied the right to *subscribe* to newspapers (Doc. #2, 5). In any event, the Supreme Court has held that a prison's restrictions on newspapers, magazines, and photographs by certain inmates is justified by the need to provide particularly difficult prisoners with increased incentives for better prison behavior. *Beard v. Banks*, 548 U.S. 521, 530-33 (2006).

Glover further complains that the GCDC confiscated or returned a photograph of some pit bull puppies that was sent to him by family members. Glover asserts that the GCDC confiscated the photograph because the dogs appeared to be engaged in a sexual activity. However, Glover contends that the photograph was of two puppies playing together. The GCDC Mail Regulations prohibit any pictures of a sexual nature or in poor taste (Doc. #2-4). That regulation leaves the

11

decision of what constitutes "poor taste" to the discretion of GCDC officials.

The Supreme Court has approved of the broad discretion given to the officials responsible for screening incoming mail, stating that "[w]here the regulations at issue concern the entry of materials into the prison, . . . a regulation which gives prison authorities broad discretion is appropriate." *Thornburgh*, 490 U.S. at 416. The Court further rejected heightened judicial scrutiny of prison policies, explaining that rigorous scrutiny is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Id.* at 409-10. Furthermore, the Sixth Circuit has upheld a policy prohibiting the introduction of magazines containing actual or simulated sexual acts since it was "rationally related to the goal of a safer prison environment." *Rogers v. Martin*, 84 F. App'x 577, 578-79 (6th Cir. 2003). Additionally, other courts have upheld even stricter policies. *See e.g., Jones v. Salt Lake County*, 503 F.3d 1147, 1152-56 (10th Cir. 2007) (upholding regulation prohibiting sexually explicit material); *Munro v. Tristan*, 116 F. App'x 820, 821 (9th Cir. 2004) (upholding policy prohibiting sexually explicit material containing frontal nudity).

Thus, jail and prison officials are afforded a broad range of discretion as to what forms of non-legal incoming mail is appropriate preserve prison security. As these decisions are entitled to judicial deference, this Court will not second-guess either the GCDC's incoming mail policy or the confiscation of the canine photograph.

4. Equal Protection/Discrimination Claims

Glover alleges that GCDC officials discriminate against Class "A," "B," and "C" prisoners in favor of Class "D" prisoners, arguing that the latter are provided with the option to purchase Q-tips for $1.50 while the former must incur a $10.00 medical payment to have their ears cleaned.

(Doc. #2-3, 8).

While this claim appears to be nothing but vexatious and facially frivolous, it nevertheless fails under the Fourteenth Amendment's equal protection analysis. The Equal Protection Clause does not prohibit the government from treating different groups of persons in different ways, it merely prohibits the government from doing so arbitrarily or for a legally-impermissible reason.

In order to state an equal protection claim, a plaintiff must allege that a state actor intentionally discriminated against him based on his membership in a protected class. *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). However, Plaintiff is not a member of a protected class, nor does he allege any illegal discriminatory purpose. When an equal protection challenge is brought and no fundamental right is involved, and the plaintiff does not allege that he is a member of a suspect class, as herein, then the lowest level of scrutiny applies to the defendants' actions. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445-46 (1985). "[T]his Court need only determine whether the defendants' decision was rationally related to a legitimate state interest." *Id.* Only allowing prisoners housed in certain areas of the detention center to have access to Q-tips is clearly related to the state's interest in prison security. Therefore, Glover cannot establish a violation of his equal protection rights, and his claim will be dismissed, with prejudice.

### 5. Claims Challenging Disciplinary Action

Glover alleges that when he was placed into a disciplinary area known as "the hole" on two occasions, he was punished without due process of law. (Doc. #2-3, 5). When "evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, ... the proper inquiry is whether those

13

conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. The court must determine whether the conditions or restrictions imposed are for "the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. The effective management of a prison and ensuring inmate security is a valid reason to impose certain conditions and restrictions on pretrial detention. *Id.* at 540.

In his complaint, Glover admitted that he used the emergency phone in his unit to call control to complain about cold conditions. As a result, Glover was taken to "the hole, (lock-up)." During this period of confinement, Glover had yet another incident. He specifically stated that he "reached inside the toilet and began to sling shit everywhere, piss out the door/bean hole and spit on the window. Sgt. Hale and Corp. Courtenay took video tape on two days." *Id*. at 4. In response to that conduct, Glover continued to be held in disciplinary segregation for three and a half more days.

Glover's confinement in disciplinary segregation did not violate his Fourteenth Amendment due process rights. Given his conduct, GCDC officials had a legitimate reason for placing Glover in disciplinary confinement. It was necessary to maintain the order of the detention center and ensure inmate security. Furthermore, Glover was only kept in confinement long enough to make certain he had calmed down and would no longer pose a threat to the GCDC's order or security. Therefore, this claim will be dismissed with prejudice.

### 6. Claims Challenging Grievance Procedures

Glover asserts that between November 18-23, 2009, he was denied grievance forms. (Doc. #2-3, 1). He further claims that GCDC officials failed or refused to respond to his grievances. *Id*. at 7. However, Glover's own attachments appear to partially refute his claims because he attached four grievances containing the GCDC's responses to various complaints. (Docs. #2-2; 2-6; 2-7; 2-

14

9).

Assuming Glover did not receive responses to other grievances, he has not stated a viable First Amendment claim concerning the grievance procedures at the GCDC. First, jail officials are not obligated to properly respond to grievances in any specific manner, because there is no inherent constitutional right to an effective prison grievance procedure. *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). *See e.g., Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

Lacking a response from GCDC on any given condition of confinement issue, Glover was then free to seek judicial relief, which he has done by filing not only this action but the action he states that he filed in the Grant Circuit Court. Thus, Glover has experienced neither interference with his right of access to the courts, nor any other actual injury, resulting from the GCDC's alleged failure to respond to his grievances. The claim will be dismissed with prejudice.

### 7. Claims Challenging State Court Criminal Prosecution

Glover complained at length about various aspects of a criminal proceeding pending against him in the Grant Circuit Court. (Doc. #2, 103). Specifically, he complains about rulings from that court and about the performance of his criminal attorney. It appears that Glover asks this Court to interfere with the state court proceeding and afford him various forms of relief. Assuming that Glover's state court criminal proceeding is still pending, this Court is required to abstain from meddling in a pending state court criminal proceeding. *See Younger v. Harris*, 401 U.S. 37 (1971); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001) (*"Younger* abstention counsels a federal court to abstain from adjudicating a matter properly before it in deference to ongoing state criminal proceedings").

Abstention in favor of state court proceedings is proper where there exists: (1) an ongoing state proceeding; (2) an important state interest; and (3) an adequate opportunity in the state judicial proceedings to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Fieger v. Thomas*, 74 F.3d 740, 744 (6th Cir.1996). All three of these criteria are met in the instant case. Where *Younger* abstention is appropriate, it requires dismissal of those claims without prejudice. *Zalman v. Armstrong*, 802 F.2d 199, 207 n.11 (6th Cir.1986). These claims will be dismissed without prejudice.

Assuming, on the other hand, that Glover has now been convicted of the criminal charges filed against him in state court, other doctrines bar this Court from considering Glover's claims. First, the claims would be barred by the *Rooker-Feldman* Doctrine, which holds that a federal district court may not hear an appeal of a case already litigated in state court. *See D.C. Cir. v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine precludes federal court action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced...." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005).

Additionally, to the extent Glover seeks monetary relief for alleged violations of his constitutional rights, his claims would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck*, 512 U.S. at 486-87. In summary, Glover would be required to demonstrate a favorable termination of his criminal conviction, *i.e.*, show that the conviction was invalid or has been set aside, before he

could assert civil claims for damages in federal court. He has not made such a showing in this action.

### 8. Claims Challenging Progress of State Court Proceedings

In Glover's most recent submission, (Doc. #6-1), he complains about the slow progress of litigation he filed in the Grant Circuit Court. Glover is advised this Court has no control over the Grant Circuit Court, which most likely experiences great demands on its limited resources.

To the extent that Glover's letter could be broadly construed as request for some type of mandamus relief, *i.e.*, to "order" the state court to act with greater expediency, the request is denied because federal courts may not compel state officials to follow state law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (establishing that the Eleventh Amendment bars federal courts from using the writ of mandamus to compel state officers to comply with state law in the performance of their duties). Furthermore, the *Younger* abstention doctrine would also preclude such action by this Court.

### CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

(1)     Plaintiff William K. Glover's First, Eighth and Fourteenth Amendment claims asserted against the defendants, arising from his confinement at the Grant County Detention Center, are **DISMISSED WITH PREJUDICE**.

(2)     Plaintiff  William K. Glover's Fourteenth Amendment claims against the Grant Circuit Court are **DISMISSED WITHOUT PREJUDICE**.

(3)     The Court will enter a separate Judgment.

This 16th day of July, 2010.

